# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| ANGELA JOY JENKINS, J.A.S. ex rel. ANGELA JOY JENKINS and PAMELA JO DAWSON,<br><br>Plaintiffs,<br><br>vs.<br><br>WOODBURY COUNTY, IOWA DEPARTMENT OF HUMAN SERVICES, MARCHELLE DENKER, DAWN BOYLE and SHANE FRISCH,<br><br>Defendants. | No. C20-4013-LTS<br><br>**MEMORANDUM OPINION AND ORDER** |

This matter is before me pursuant to a motion (Doc. 15) to dismiss filed by defendant Marchelle Denker and a motion (Doc. 20) to dismiss filed by defendants Dawn Boyle, the Department of Human Services (DHS) and Shane Frisch (hereinafter the Department Defendants). Plaintiffs Angela Jenkins and Pamela Dawson did not file a resistance to the motions to dismiss but filed a motion (Doc. 35) to amend the complaint. They have also filed a motion (Doc. 27) to appoint counsel.

In their complaint, plaintiffs state the basis of their claim is "legalized kidnapping, cruel & unusual punishment, racial discrimination, fraudulent statements, the CPS and DHS failed to follow their own policies, family law, [] abused their privileges and failure to protect the family." Doc. 1 at 3. Plaintiffs' claim is that:

> this has been on-going, my daughter died instead of placing [J.S.] with family members her biological family they denied us to see her to explain her mother's death and lied.
>
> The shock and actions of these officials left our family in total disbelief. Donnelle before she died stated she felt they didn't want to give her daughter back. There was so much hostility, game playing, even in the

court system. Motions for intervention, motion to add people of interest. Family were ignored. None of this was justified.

Doc. 1 at 5.[1]

## I. BACKGROUND

On February 28, 2020, plaintiffs filed their complaint (Doc. 1) in the Southern District of Iowa.[2] Jenkins also filed a motion to proceed in forma pauperis. On March 2, 2020, the United States District Judge Rebecca Goodgame Ebinger granted Jenkins' motion to proceed in forma pauperis.[3] Doc. 3. The Clerk of Court for the Southern District of Iowa then issued a summons packet to the plaintiffs. Doc. 4. Judge Ebinger did not conduct a review of the case for the purposes of 28 U.S.C. § 1915(e)(2) but, approximately a week after granting in forma pauperis status, transferred the case to this court. Doc. 5.

I typically conduct an initial review of any case in which a plaintiff seeks in forma pauperis status. If the plaintiff is incarcerated, the authority for that initial review is predicated on 28 U.S.C. § 1915A. If the plaintiff is not incarcerated, as in this case, the authority for that initial review is predicated on 28 U.S.C. § 1915(e)(2). *See Benter v. Iowa, Dep't of Transp.*, 221 Fed. App'x 471 (8th Cir. 2007) (unpublished). However,

---

[1] Plaintiffs attached a "Statement of Fact" to the complaint. Doc. 1 at 12. However, that document does nothing to clarify plaintiffs' claims.

[2] Although plaintiffs are proceeding pro se, the complaint was signed only by Angela Jenkins. This is a violation of Federal Rule of Civil Procedure 11(a), which requires each party proceeding pro se to personally sign all filings. Accordingly, Jenkins is the only plaintiff whose claims are properly before the court. However, because it does not affect the outcome of the pending motions I will use "plaintiffs" to refer to the two individuals listed on the complaint.

[3] Both the in forma pauperis motion (Doc. 2), and the order granting it (Doc. 3), refer only to plaintiff Jenkins. Typically, each pro se plaintiff wishing to proceed in forma pauperis must file their own motion. *Boriboune v. Berge*, 391 F.3d 852, 855 (7th Cir. 2004); *see also Hagan v. Rogers*, 570 F.3d 146, 155 (3d Cir. 2009). However, the summons issued and served listed as plaintiffs "Angela Jenkins *et al*.," Doc. 4 at 3-4. As with the Rule 11 issue described above, I will forgo addressing this issue because it does not affect the outcome of this case.

2

because this case had already progressed to a point where plaintiffs had been issued a summons packet before it was transferred to this court, I did not conduct an initial review. *See* Doc. 7. And to avoid confusion due to the transfer, I directed the Clerk's office to serve the defendants. *Id*.

Defendant Woodbury County filed an answer (Doc. 14) on May 6, 2020. Denker and the Department Defendants filed their motions (Docs. 15, 20) to dismiss on June 1, 2020. On August 31, 2020, plaintiffs filed several motions, including their first motion (Doc. 26) to amend and the pending motion (Doc. 27) to appoint counsel. On September 1, 2020, the court denied the motion to amend because plaintiffs failed to provide a copy of the proposed amended complaint with their motion. Doc. 31. On September 10, 2020, the Department Defendants filed a resistance (Doc. 34) to the motion to appoint counsel. On September 18, 2020, plaintiffs filed the current motion (Doc. 35) to amend. On October 5, 2020, Denker filed a resistance (Doc. 37) to the motion to amend.

## II.   PENDING MOTIONS

### A.   *Motion to Dismiss Standard*

The Federal Rules of Civil Procedure authorize a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Supreme Court has provided the following guidance in considering whether a pleading properly states a claim:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555, 127 S. Ct. 1955. Nor does a

3

Case 5:20-cv-04013-LTS-KEM   Document 41   Filed 03/31/21   Page 3 of 13

> complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S. Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557, 127 S. Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

Courts assess "plausibility" by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679). Also, courts "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)). While *factual* "plausibility" is typically the focus of a Rule 12(b)(6) motion to dismiss, federal courts may dismiss a claim that lacks a cognizable *legal* theory. *See, e.g.*, *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Ball v. Famiglio*, 726 F.3d 448, 469 (3d Cir. 2013); *Commonwealth Prop. Advocates, L.L.C. v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011); *accord Target Training Intern., Ltd. v. Lee*, 1 F. Supp. 3d 927 (N.D. Iowa 2014).

In considering a Rule 12(b)(6) motion to dismiss, ordinarily the court "cannot consider matters outside the pleadings without converting the motion into a motion for summary judgment." *McMahon v. Transamerica Life Ins.*, No. C17-149-LTS, 2018 WL 3381406, at *2 n.2 (N.D. Iowa July 11, 2018); *see* Fed. R. Civ. P. 12(b)(6). On the other hand, when a copy of a "written instrument" is attached to a pleading, it is considered "a part of the pleading for all purposes," pursuant to Federal Rule of Civil

4

Procedure 10(c). Thus, when the pleadings necessarily embrace certain documents, I may consider those documents without turning a motion to dismiss into a motion for summary judgment. *Id*.

When a complaint does not state a claim for relief that is plausible on its face, the court must consider whether it is appropriate to grant the pleader an opportunity to replead. The rules of procedure permit a party to respond to a motion to dismiss by amending the challenged pleading "as a matter of course" within 21 days. *See* Fed. R. Civ. P. 15(a)(1)(B). Thus, when a motion to dismiss highlights deficiencies in a pleading that can be cured by amendment, the pleader has an automatic opportunity to do so. When the pleader fails to take advantage of this opportunity, the question of whether to permit an amendment depends on considerations that include:

> whether the pleader chose to stand on its original pleadings in the face of a motion to dismiss that identified the very deficiency upon which the court dismissed the complaint; reluctance to allow a pleader to change legal theories after a prior dismissal; whether the post-dismissal amendment suffers from the same legal or other deficiencies as the dismissed pleading; and whether the post-dismissal amendment is otherwise futile.

*Meighan v. TransGuard Ins. Co. of Am.,* 978 F. Supp. 2d 974, 982 (N.D. Iowa 2013).

### B. *Motion to Amend*

As noted above, plaintiffs have 21 days to file an amended complaint in response to a motion to dismiss as a matter of course. Plaintiffs did not file an amended complaint within 21 days of when the motions to dismiss were filed. Rather, three months after the motions to dismiss were filed, plaintiffs filed a motion (Doc. 26) to amend along with a motion (Doc. 29) to extend the deadline to resist the motions to dismiss. On September 1, 2020, the court denied the motion to amend without prejudice because plaintiffs failed to comply with the Local Rules (*see* Doc. 31) but, in a separate order (Doc. 33), for "good cause," granted plaintiffs until September 18, 2020, to "file any response or resistance" to the pending motions to dismiss.

5

On September 18, 2020, plaintiffs filed a document (Doc. 35) captioned as a motion to amend. Doc. 35. However, once again plaintiffs did not attach a proposed amended complaint as is required by LR 15. Instead, the only attachment (Doc. 35-1) appears to be a photocopy of the original complaint filed in the Southern District of Iowa. The motion itself describes the proposed additions to the existing complaint within the argument in favor of amendment. In that argument, plaintiffs state that they seek to add additional plaintiff (Sharon Jenkins-Wells)[4] and three new defendants (Tricia DeHarty, Amy Hennies and Dezirae Pangelina) to the case. The motion states:

> The Plaintiff will prove there was much animosity, bias, and violations conducted by these Defendants as well as false reports which were used to justify their actions in their official capacity and their Individual. Most of the actions and false statements can't be justified, and acts of malice and preferential treatment toward the Foster Mother is inexcusable.

Doc. 35 at 2.

There is a question about whether the motion to amend is timely, and whether the order on the motion for extension of time gave plaintiffs additional time to file their motion to amend as a matter of course. Denker argues that the motion to amend is not timely. Doc. 37. However, I need not reach that issue because regardless of the extent to which the court's order (Doc. 33) granted plaintiffs additional time to file a second motion to amend, the court's order (Doc. 31) denying the prior motion to amend specifically stated that "[p]laintiff's may file a new motion to amend that complies with the Local Rules."

Local Rule 15 states that plaintiffs "must electronically attach to the motion and file under the same docket entry the proposed amended or supplemented pleading." The Rule goes on to state that "[a]n amended or supplemented pleading, whether filed as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1) or as an electronic attachment to a motion, must not, except by leave of court, incorporate any prior

---

[4] Sharon Jenkins-Wells signed the motion to amend. Pamela Jo Dawson did not. Doc. 35 at 4.

6

pleading by reference, but must reproduce the entire new pleading." Despite being directed to follow this rule, plaintiffs did not do so. Because plaintiffs failed to comply with the court's prior order, and with Local Rule 15, the motion to amend (Doc. 35) will be denied. *See, e.g., Farnsworth v. Kansas City, Mo.*, 863 F.2d 33, 34 (8th Cir. 1988) (per curiam) (pro se litigants are not excused from complying with court orders).

Alternatively, I would deny the motion to amend as futile. *See Baptist Health v. Smith*, 477 F.3d 540, 544 (8th Cir. 2007) (describing reasons justifying denial of motion to amend, including undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies with prior amendment, undue prejudice to non-moving party, or futility). Plaintiffs make no specific allegations against the proposed new defendants, nor does the proposed amendment contain a "short and plain statement of the claim" as required by Fed. R. Civ. P. 8(a)(2). Rather, as set out above, the motion to amend is a collection of unspecific, conclusory allegations. Accordingly, plaintiffs' purported amendment fails to state a claim for which relief can be granted and is therefore futile.[5]

## C. *Motions to Dismiss*

In their motions to dismiss, defendants make a variety of arguments. Denker argues that plaintiffs complaint should be denied pursuant to the *Rooker-Feldman* doctrine, that she is not a state actor pursuant to 42 U.S.C. § 1983, she has quasi-judicial immunity, plaintiffs cannot sustain a claim against her in her official capacity and plaintiffs complaint fails to state a claim for which relief can be granted. *See* Doc. 15-1. The Department Defendants raise the same issues,[6] and additionally argue that plaintiffs' claims are barred by the statute of limitations, are barred by the doctrine of

---

[5] Even if plaintiffs could file an amendment as a matter of course under Fed. R. Civ. P. 15(a)(1), it would still be subject to dismissal if it does not state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) because plaintiffs are proceeding in forma pauperis.

[6] Whereas Denker argued she was not state actor because she is a public defender, DHS argues it is not a state actor because agencies are not a person within the meaning of § 1983.

7

Case 5:20-cv-04013-LTS-KEM   Document 41   Filed 03/31/21   Page 7 of 13

res judicata, that they are entitled to qualified immunity and to the extent plaintiffs can make this type of claim, they have named improper defendants.

Most, if not all, of those arguments are correct.[7] Plaintiffs' complaint (the "State of Claim" section of which is quoted in its entirety above) makes no specific allegation against any defendant. Rather, it is a vague and conclusory statement that plaintiffs were unsatisfied with some type of child custody proceeding. The complaint does not explain with any specificity who the plaintiffs are in relation to the child custody case at issue, the facts of that child custody case or how the individual defendants were involved in it. More importantly, the complaint does not allege any facts explaining how any of the defendants engaged in "cruel and unusual punishment," "racial discrimination" or violated plaintiffs due process rights, the constitutional violations alleged by plaintiffs.[8] Accordingly, under the *Iqbal* standard set about above, plaintiffs' complaint cannot survive summary dismissal because they have failed to allege facts giving rise to any plausible claims against defendants.

Second, "[t]he *Rooker–Feldman* doctrine provides that, with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments." *Ballinger v. Culotta*, 322 F.3d 546, 548 (8th Cir. 2003) (internal citations omitted); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp*, 544 U.S. 280, 283–84 (2005). Accordingly, unless the state court decision related

---

[7] And, as noted above, are unresisted.

[8] In fact, but for context provided by documents embraced by the motions to dismiss (Docs. 18, 22), I would be in the dark about the actual issue in this case. Based on those documents, which are all sealed court records, the following seems to be a basic statement of the facts: Jenkins is the biological grandmother of a child, J.S., who the Iowa state courts determined to be a child in need of assistance. J.S.'s biological mother is deceased and her biological father's parental rights were terminated. The Iowa state court did not place J.S. in Jenkins' custody, finding it was not in J.S.'s best interest. J.S. was ultimately adopted and is no longer within the jurisdiction of the Iowa state courts. Defendants were individuals and agencies involved in the proceedings related to J.S.

has been invalidated, the federal court cannot act as 'super' appeals court. As one federal district court stated in a similar case:

> Plaintiff's claims are not cognizable under § 1983. In essence what [plaintiff] is seeking is the modification or overturning of the state court order deciding the issue of custody and child support. Other than the United States Supreme Court, federal courts are without jurisdiction to adjudicate claims which seek review of a state decision on the ground that the decision violated the federal constitutional rights of one of the parties. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482–86, 103 S. Ct. 1303, 75 L. Ed.2d 206 (1983); *Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 296, 90 S. Ct. 1739, 26 L.Ed.2d 234 (1970); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923). *See also Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995); *Kahn v. Kahn*, 21 F.3d 859, 861 (8th Cir. 1994).
>
> Furthermore, domestic relations law is governed by state law and state institutions. Principles of federalism preclude federal court challenges to state court orders in child custody and child support matters. *See e.g., Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581, 99 S. Ct. 802, 59 L. Ed.2d 1 (1979); *Roman–Nose v. N.M. Dep't of Human Services*, 967 F.2d 435, 437 (10th Cir. 1992) (federal action alleging constitutional infirmity in state parental-rights proceeding could not be maintained under § 1983).

*Owens v. Welch*, Civil No. 09-2011, 2009 WL 1203716, at *3 (W.D. Ark. 2009) (unpublished).

It is not impossible for a parent to allege a plausible claim under 42 U.S.C. § 1983 related to some aspect of a state court child custody case.[9] *See Webb as next friend of*

---

[9] Obviously, the plaintiffs in this case are not J.S.' parents and, as noted by the Department Defendants, grandparents generally lack enforceable rights under 42 U.S.C. § 1983. Doc. 20-1 at 16-17. The Eighth Circuit has stated:

> We do not believe that the drafters of the Fourteenth Amendment intended to protect from government interference every conceivable family relationship, no matter how far removed. Further, it is illogical to believe that federal law requires that money be paid to a grandmother whose grandchild is injured by the state.

*K. S. v. Smith*, 936 F.3d 808, 811 (8th Cir. 2019) (finding in part that the *Rooker-Feldman* doctrine did not bar a parent's claim that a social workers' seizure of their children, based on false statements, violated the constitution when the state court case had been dismissed without an adjudication on the merits); *see also Riehm v. Engelking*, 538 F.3d 952, 965 (8th Cir. 2008). However, in *Webb*, the Eighth Circuit noted that "[a]n important consideration for a court confronted with the issue of whether *Rooker-Feldman* applies is to analyze 'the effect the requested federal relief would have on the state court judgment.' *See Simes v. Huckabee*, 354 F.3d 823, 827 (8th Cir. 2004)." *Webb*, 936 F.3d at 816. Based on the information contained in the documents embraced by the motions to dismiss, issues related to J.S. have reached final judgment in the Iowa state court. In their request for relief, plaintiffs specifically request, "we … want the child [J.S.] returned to her family." Doc. 1 at 10. That relief, if granted, would invalidate the state court judgments. Accordingly, plaintiffs' claims are prohibited by the *Rooker-Feldman* doctrine.

Relatedly, plaintiffs' claims are prohibited by the doctrine of res judicata. In a similar case that arose in this court, parents whose parental rights were terminated by the Iowa state court filed a 42 U.S.C. § 1983 complaint alleging that the termination violated their constitutional rights. This court granted the state defendants' motion to dismiss on res judicata grounds. The Eighth Circuit affirmed, stating:

> it is apparent that the parties to the termination proceedings in the Iowa state courts and the § 1983 action are identical. Donna Jean and Kester Gene Robbins resisted termination of their parental rights in the Iowa state courts and presently complain that their civil rights were violated by the termination. It is equally apparent that the causes of action in each proceeding are the same. Appellants argued in state court as they do here that their parental rights were unjustly and unconstitutionally terminated.

---

Protecting familial relationships does not necessarily entail compensating relatives who suffer a loss as a result of wrongful state conduct…

*Harpole v. Arkansas Dep't of Human Servs.*, 820 F.2d 923, 928 (8th Cir. 1987). Thus, there is no indication that plaintiffs would have standing to bring these claims, even if properly pleaded.

10

Case 5:20-cv-04013-LTS-KEM   Document 41   Filed 03/31/21   Page 10 of 13

> Thus their § 1983 action is based on the same nucleus of operative fact before the Iowa courts. Appellants had the opportunity to raise these issues before the Iowa Supreme Court and having failed to do so cannot now attempt to circumvent the doctrine of claim preclusion by merely alleging a different theory of recovery where the actions arise out of the same transaction. *Gatzemeyer v. Vogel*, 589 F.2d 360 (8th Cir. 1978).

*Robbins v. Dist. Ct. of Worth Cty., Iowa*, 592 F.2d 1015, 1018 (8th Cir. 1979). In this case, the documents filed by defendant Denker show that Jenkins filed a motion to intervene in the state court case, raising these same claims, and the motion was considered and denied by the Iowa state courts. *See* Doc. 18 at 18-20. Accordingly, Jenkins' claims are barred by the doctrine of res judicata.

Additionally, all of the defendants are immune from suit. Denker was an appointed attorney in the Iowa state court process related to J.S. For purposes of § 1983, the Supreme Court has held that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981). *See also Myers v. Vogal*, 960 F.2d 750, 750 (8th Cir. 1992) (stating that attorneys who represented plaintiff, "whether appointed or retained, did not act under color of state law and, thus, are not subject to suit under section 1983"); and *Rogers v. Bruntrager*, 841 F.2d 853, 856 (8th Cir. 1988) ("[p]ublic defenders do not act under color of state law for purposes of 42 U.S.C. § 1983 when performing the traditional functions of defense counsel"). In relation to J.S.' case, there is no indication Denker was doing anything other than traditional functions of an appointed attorney. Accordingly, she is immune from suit.

DHS, as a state agency, is not a proper § 1983 defendant. In *Will v. Michigan Dept. of State Police*, the Supreme Court ruled "that a State is not a person within the meaning of § 1983." 491 U.S. 58, 63 (1989).[10] *See also Owens v. Scott Cty. Jail*, 328

---

[10] Municipalities may be found liable in a § 1983 case under limited circumstances, pursuant to the rational articulated in *Monell v. Department of Social Servs. of New York*, 436 U.S. 658 (1978). *See Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007).

F.3d 1026, 1027 (8th Cir. 2003) (stating that "county jails are not legal entities amenable to suit"); *Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (stating that "departments or subdivisions" of local government are not "juridical entities suable as such"); *and De La Garza v. Kandiyohi Cty. Jail*, 18 Fed. Appx. 436, 437 (8th Cir. 2001) (affirming district court dismissal of county jail and sheriff's department as parties because they were not suable entities). Thus, plaintiffs' claims against DHS fail as a matter of law.[11]

Finally, the individual defendants in their official capacities are immune from suit. *See Will*, 491 U.S. at 71. Additionally, as social workers involved in a child protective action, Boyle and Frisch are entitled to immunity. *Thomason v. SCAN Volunteer Servs., Inc.*, 85 F.3d 1365, 1373 (8th Cir. 1996) (social workers involved in bringing a child abuse case are protected by prosecutorial immunity and social workers involved in testifying in a child abuse case are protected by absolute witness immunity).

For all of the reasons described above, defendants' motions to dismiss (Docs. 15, 20) will be granted. I need not consider defendants' remaining arguments.

---

[11] Woodbury County, Iowa, is listed as a defendant. The County was served, filed an answer (Doc. 14) and did not file a motion to dismiss. However, the section of plaintiffs' complaint entitled "The Defendants" does not list Woodbury County as a defendant and it is unclear whether plaintiffs intended to sue the County separately or believed the County was connected to the DHS defendant. Regardless, any claim against Woodbury County fails as a matter of law because the County is not a person within the meaning of § 1983. As such, the claims against Woodbury County are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### III. CONCLUSION

For the reasons set forth herein:

1. Plaintiffs' motion to amend (Doc. 35) is **denied**.
2. Denker's motion to dismiss (Doc. 15) is **granted**.
3. The Department Defendants' motion to dismiss (Doc. 20) is **granted**.
4. Plaintiffs' claims against Woodbury County are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).
5. Plaintiffs' motion to appoint counsel (Doc. 27) is **denied** as moot.
6. Because this order disposes of all claims, this action is **dismissed** and the Clerk of Court shall **close this case**.

**IT IS SO ORDERED.**

**DATED** this 31st day of March, 2021.

_____
Leonard T. Strand, Chief Judge